In the matter of the estate of NORA HANRETTY, deceased.

[Decided June 27th, 1924.]

On appeal from a decree of the prerogative court advised by Vice-Ordinary Fielder, who filed the following opinion:

"Nora Hanretty died September 17th, 1922. Her will was admitted to probate September 28th, 1922, and letters testamentary were granted to her two sons John and Owen A. Hanretty, the executors therein named. The will directs the executors to sell the real property, 64-66 Littleton avenue, Newark, and to divide the proceeds among her four sons, John, Joseph, William and Owen.

"A petition was filed in the orphans court April 24th, 1923, by Owen, individually and as executor, and by Joseph and William for the removal of John as executor, and after a

hearing a decree was entered May 31st, 1923, reciting that it appeared to the court that said John Hanretty, as such executor, was guilty of all the offenses (except embezzlement) mentioned in the statute hereinafter referred to and had thereby hindered and prevented the proper administration of said estate and ordering that the letters testamentary granted to him be revoked and that he be removed as executor.

"The authority for such order must be found in chapter 268 of the laws of 1921, so much of which as is applicable, reads as follows:

" 'If it shall be made to appear * * * that any executor * * * has embezzled, wasted or misapplied any part of the estate committed to his custody, or has abused the trust and confidence reposed in him, or if it shall be made to appear * * * that any one of several executors * * * has failed, neglected or refused to properly perform his duties as such executor * * * or has failed, neglected or refused to join with the other executors * * * in the administration of the estate committed to their care and by such failure, neglect or refusal has hindered or prevented the proper administration or settlement of such estate, the said orphans court may revoke the letters of such executor * * * and remove such executor * * * from office.'

"There is no testimony upon which the finding of the orphans court that the executor had wasted or misapplied part of the estate can be based, and the only question to be determined is whether the refusal of the executor, on or about April 19th, 1922, to execute with his co-executor a contract for the sale of the Littleton avenue property was an abuse of the trust and confidence reposed in him, or was a failure to properly perform his duties, whereby he hindered or prevented the proper administration or settlement of his estate.

"Joseph, William and Owen had quarreled with their brother John over some part of the estate the day of their mother's funeral and thereafter they were not on speaking terms. For several years prior to his mother's death, John had occupied a floor in the Littleton avenue house as tenant, at $35 per month. Two days after the will was probated the three brothers signed and served a notice on John demanding that he pay rent at the rate of $75 per month, and on October 31st,

1922, they served him with a notice to quit the premises and surrender possession to Owen. On October 1st, 1922, the three brothers went to John's home, and Owen as their spokesman, told John that the real estate should be sold as soon as possible, and he asked John if he would like to buy the property. John agreed to a sale and expressed his desire to buy. Without further consultation with John, Owen placed a 'for-sale' sign on the property in December and interviewed prospective purchasers. Nothing further was done with reference to a sale until April 9th, 1923, when Joseph, William and Owen again called on John and informed him that Owen had a purchaser at $14,000. They asked John if he wanted the property and how much he was willing to pay. John offered $8,000, and the brothers then bid among themselves, John finally raising the bid to $13,000 and saying he would pay no more. Owen asked John whether the latter would sign a contract to sell at $14,000, and John said he would. Without discussing the matter further with John, Owen obtained an offer of $14,500 from one Brady and had Brady give him his check for $500 on account and sign a contract to buy, and with his two other brothers he called on John, April 19th, 1923, and standing in the hallway of John home, demanded that John sign the contract. A discusion of a few minutes followed. John again expressed a desire to buy the property and refused to sign the contract; whereupon the brothers left and two days later swore to the petition for John's removal as executor.

"I do not feel that these facts justified the orphans court in placing the stigma of removal on John. The facts do not appear to me to show bad faith, or a lack of fidelity, on John's part in the performance of his duty as executor. His duties under the will included not only the sale of the property in question, but the disposition and distribution of the balance of the estate. His mother desired that the two executors should administer her estate and she reposed confidence in John and by her will said that he should be one of her two executors. Her testamentary wish should not be nullified by removing John, thus making Owen sole executor, unless it

appears clearly that John was flagrantly derelict in his duties. Owen appears to have assumed sole charge of the sale of the property; to have dealt with various prospective purchasers without consultation with John and to have ignored John's rights as co-executor. The feeling of hostility between them kept them apart, and the treatment which all the brothers had accorded John quite naturally did not engender a friendly feeling toward them, or toward the sudden and peremptory demand presented by them that he forthwith sign the Brady contract. He wanted to buy the property, and while a sale to him, without leave of the court or without the consent of the heirs would have been invalid, the heirs had offered and were willing to consent to such sale and so stated at their last interview prior to April 19th, 1923. When they called on him, April 19th, 1923, and demanded that he sign the Brady contract, had they presented their request in a friendly spirit or shown a willingness to further discuss a sale to him at a sum greater than, or equal to, the Brady offer, or had they thereafter called him to attend a conference with an attorney, or with some third person, as peace maker, their differences might have been adjusted satisfactorily. But they were unwilling, apparently, to give him an opportunity for consideration or reflection, because they instituted proceedings for his removal forthwith. The law gives an executor a reasonable time within which to settle his estate, and I do not think that John's refusal to accept an offer for and to join with his co-executor in the execution of a contract for the sale of the property within seven months after his appointment as executor, even if such refusal was based upon a desire to purchase the property for himself (when the heirs had expressed their willingness to sell to him), can be said to have been an abuse of the trust and confidence reposed in him, or to have hindered or prevented the proper administration or settlement of his estate. There is nothing in the evidence to show the value of the property, except the inference which may be drawn from the fact that $14,500 was the best offer made for it up to that time and that none of the brothers had offered more than $13,000. Perhaps the property can be sold

for a greater sum, and in case the sum offered by Brady cannot be again obtained from him, or from another, it may be that John will be chargeable with the difference between $14,500 and what the property does bring; but that is a matter for future consideration.

"A decree will be advised reversing the decree of the orphans court."

*Mr. Joseph M. Degnan,* proctor for the appellant.

*Mr. John Trier,* proctor for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reason stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON—10.

*For reversal*—None.